IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:21-CV-49-RJ

| | |
|---|---|
| DEMETRIUS VERNA SHERROD, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -22] pursuant to Fed. R. Civ. P. 12(c). Claimant Demetrius Verna Sherrod ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the decision of the Acting Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability and DIB and for SSI[1] on

---

[1] Plaintiff's application for SSI does not appear in the administrative record.

April 15, 2019, alleging disability beginning October 1, 2015.[2] (R. 21, 232–39). Both claims were denied initially and upon reconsideration. (R. 21, 100–55). A hearing before an Administrative Law Judge ("ALJ") was held on May 19, 2020, at which Claimant, who was unrepresented, and a vocational expert ("VE") appeared and testified. (R. 21, 39–75). On November 24, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 18–38). On December 23, 2020, the Appeals Council denied Claimant's request for review. (R. 11–15). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*,

---

[2] Claimant previously filed claims in February 2016 that were denied on December 17, 2018, (R. 77–99), and the current decision does not readjudicate the prior unfavorable decision; the period at issue in this case December 18, 2018 through December 31, 2020, Claimant's date last insured, (R. 22).

2

76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform ... past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based

3

on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred in (1) considering whether the combination of Claimant's impairments medically equaled the severity of a listing, (2) finding Claimant was able to work at the light exertional level, and (3) finding there are jobs in the economy Claimant can successfully perform. Pl.'s Mem. [DE-16-1] at 4–7.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since December 18, 2018, the date of the prior unfavorable decision. (R. 24). Next, the ALJ determined Claimant had the severe impairments of asthma; morbid obesity; left knee spurring, s/p arthroscopic surgery; thoracolumbar scoliosis and spondylosis; recurrent arrhythmia; diabetes mellitus; and gastroesophageal reflux disease. (R. 24–25). The ALJ also determined Claimant's left shoulder arthropathy was a non-severe impairment, and carpel tunnel syndrome was not a medically determinable impairment. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25–27).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[3] with the following limitations:

claimant can stand and/or walk 4 hours in an 8-hour workday, sit 6 hours in an 8-

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

> hour workday, and lift/carry 20 pounds occasionally and 10 pounds frequently. The claimant can occasionally push/pull with the bilateral lower extremities; never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold; extreme heat; humidity; pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation; and hazards, such as dangerous machinery and unprotected heights.

(R. 27–32). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence of record. (R. 28).

At step four, the ALJ concluded Claimant was unable to perform her past relevant work as a cook. (R. 32). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 32–33).

## V. DISCUSSION

### A. Step Three - Medical Equivalence of a Listing

Claimant contends that the ALJ improperly considered whether the combination of her severe and non-severe impairments medically equaled the severity of a listing. Specifically, Claimant points to her long and diverse list of impairments, her complicating morbid obesity, and the number and quantity of her medications. Claimant argues that the ALJ failed at step three, or later in the RFC analysis, to sufficiently articulate why Claimant's combination of impairments does not result in a disability finding. Pl.'s Mem. [DE-16-1] at 4–5. Defendant contends that the ALJ engaged in the required analysis of Claimant's combination of impairments, and Claimant failed to argue how the record supports any further restrictions. Def.'s Mem. [DE-23] at 10–11.

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact

5

alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Even if an impairment does not meet the listing criteria, it may still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5); SSR 17-2p, 2017 WL 1105349 (Mar. 27, 2017). "For a claimant to qualify for benefits by showing that his . . . combination of impairments[ ] is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Zebley,* 493 U.S. at 531 (citation omitted). The burden of demonstrating that an impairment meets or equals a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *Shoulars v. Astrue*, 671 F. Supp.2d 801, 813 (E.D.N.C. 2009).

The ALJ determined that Claimant's impairments, both individually and in combination, did not meet or medically equal the criteria of any impairment in Listings 1.02, 1.03, 1.04, 3.03, 4.05, 5.00, or SSRs 14-2p or 19-2. (R. 25). The ALJ went on to discuss each of the relevant listings in detail, explaining the requirements and how Claimant's medical findings did not satisfy the criteria. (R. 25–26). Claimant fails to suggest a particular listing that her combination of impairments medically equals and presents no "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Zebley,* 493 U.S. at 531 (citation omitted). Additionally, Claimant has not satisfied the requirements of SSR 17-2p, which requires one of three findings in the record to demonstrate medical equivalence: (1) "A prior administrative medical finding from an MC or PC from the initial or reconsideration adjudication levels supporting the medical equivalence finding," or (2) "ME evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding," or (3) "A report from the AC's medical support staff supporting the medical

6

Case 4:21-cv-00049-RJ   Document 24   Filed 09/12/22   Page 6 of 14

equivalence finding." 2017 WL 1105349 at *3; *see Whelchel v. Saul*, No. 1:19-CV-00138-MR, 2020 WL 247320, at *4 (W.D.N.C. Jan. 15, 2020) (concluding that the claimant's argument that his symptoms were equivalent in severity to the symptoms associated with a listing was insufficient to demonstrate medical equivalence where he did not identify any evidence from specific medical experts regarding equivalency as required under SSR 17-2p). Claimant has cited no such evidence in the record, and therefore, there is no basis for a finding of medical equivalence. Accordingly, Claimant has failed to carry her burden of demonstrating that her combination of impairments medically equals a listing.

## B. The RFC Determination

Claimant contends the ALJ's determination that she could perform a reduced range of light exertional work was not supported by substantial evidence and not sufficiently explained. Specifically, Claimant argues that the ALJ's determination that she can stand and/or walk for four hours in an eight-hour workday is based on the state agency reviewer's and the prior ALJ's conclusions, which were made prior to Claimant's May 2020 shower fall resulting in an antalgic gait, the use of a walker to ambulate, and reduced ability to perform activities of daily living. Pl.'s Mem. [DE-16-1] at 5–6. Defendant contends substantial evidence supports the ALJ's RFC determination that Claimant could perform a reduced range of light work. Def.'s Mem. [DE-23] at 6–11.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184,

7

at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

The ALJ explicitly addressed Claimant's fall in the shower and resulting knee injury in formulating the RFC. The ALJ recounted Claimant's testimony that she had recently slipped and fallen in the shower causing injury to her knee, she may have to have surgery, her knee had remained swollen ever since, she wore a knee brace and was walking on crutches, she would elevate her leg above waist level throughout the day to alleviate her swelling, she could stand for twenty to thirty minutes at a time before her fall but could only stand for two to three minutes since her fall, she could only walk 5 minutes at a time before her fall and less than that since her fall,

8

and her daughter does most chores because Claimant cannot stand for long periods since her fall. (R. 27–28).

The ALJ also discussed the medical records, treatment, and prognosis related to Claimant's fall and knee injury as follows:

> Her examination found antalgic gait favoring the right leg with severely limited range of motion in the left knee secondary to pain and significant tenderness along the lateral side. She had positive McMurray testing on the lateral meniscus area. A series of x-rays were essentially normal, showing some slight spurring of mostly the lateral compartment. The claimant's physician ordered a walker for ambulation and prescribed pain medication (Exhibit B9F). The claimant's knee and spine impairments support a limitation to the light exertional level with the additional standing, walking, pushing, pulling, and postural limitations discussed herein. Further limitations are neither warranted nor supported. To the extent that the claimant testified that she was more limited, those allegations are not consistent with the objective findings in the contemporaneous treatment notes. For instance, although the claimant alleged that she could not stand for more than 30 minutes or walk for more than 5 minutes at a time, the treatment notes reflect normal gait, station, balance, and lower extremity strength prior to her May 2020 fall (Exhibits B3F, B4F, B5F, and B8F). Since her fall, the claimant has ambulated with an antalgic gait and she required a walker for ambulation (Exhibit B9F). However, there is no indication that this will be a long-term requirement, and such a finding would not be consistent with the imaging studies showing only slight spurring in the left knee (Id.). The claimant's testimony that she could only sit for 10 or 15 minutes at a time is not supported by the objective findings of her treating providers, who have observed the claimant to sit comfortably in no acute distress during her examinations (Exhibits B3F, B4F, and B5F).

(R. 29, 668, 670, 673, 718, 749, 705, 753, 763, 836, 1551, 1596–97).

The ALJ determined that there was no evidence to support a finding that Claimant's knee injury would persist long term. An impairment must meet the duration requirement, *i.e.*, be expected to last for a continuous period of not less than twelve months, in order to be disabling. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a); *Wyche v. Colvin*, No. 4:12-CV-239-FL, 2014 WL 1316092, at *11 (E.D.N.C. Mar. 28, 2014) (finding a determination by the plaintiff's doctor that a cervical spine impairment merited surgery came less than nine months before the ALJ's decision, and concluding that "even if at that point this impairment were deemed disabling, it would not

9

meet the 12–month duration requirement.") (citing 20 C.F.R. §§ 404.1509, 416.909). Claimant has pointed to no evidence that would contradict the ALJ's finding regarding Claimant's knee injury from her shower fall in May 2020, only six months prior to the ALJ's decision. Thus, the ALJ did not err in further reducing Claimant's RFC to account for her recent knee injury.

The ALJ also considered Claimant's asthma, recognizing that it was generally described as "poorly controlled" but that later treatment notes indicated she experienced stability in her symptoms. (R. 28). The ALJ found that a limitation to light exertional work with the reduction to four hours of standing and walking accounted for Claimant's asthma-related dyspnea. (R. 28–29). The ALJ considered Claimant's back pain and remote left knee pain but noted relatively normal examination findings, conservative treatment with muscle relaxers, and a resolution of Claimant's symptoms prior to her fall. (R. 29). The ALJ specifically considered Claimant's morbid obesity, found that it complicated nearly all of her impairments, including her spine, knee, asthma, and gastroesophageal reflux impairments, and explained that the reduction in light exertional work with additional postural and environmental limitations sufficiently accounted for Claimant's obesity. (R. 29–30).

In addition to considering Claimant's medical records, the ALJ discussed the opinion evidence. No treating physician provided an opinion regarding Claimant's limitations from her impairments but the ALJ considered the opinions of the state agency consultants, which were found to be persuasive. (R. 30–31). The ALJ specifically cited the finding that Claimant could only stand and/or walk for four hours in an eight-hour workday and required additional postural and environmental limitations. (R. 30–31, 122–23, 137–38). Although Claimant generally questions the ALJ's reliance on the state agency consultants' opinions, "non-examining state agency consultants constitute 'highly qualified physicians, psychologists, and other medical

10

specialists who are also experts in Social Security disability evaluation[,]' 20 C.F.R. § 404.1527(e)(2)(i) . . . ." *Antle v. Kijakazi*, No. 1:21CV561, 2022 WL 3576802, at *5 (M.D.N.C. Aug. 19, 2022) ("[A]n ALJ can permissibly credit the opinions of a non-examining state agency consultant, who typically offers opinions without the benefit of a full record, over those of even a treating physician, to the extent the non-examining source's opinions remain consistent with the evidence received subsequent to his or her opinions) (citing *Lapeer v. Astrue*, No. 5:08-CV-256, 2009 WL 2487038, at *7 (E.D.N.C. Aug. 13, 2009)). The ALJ found the consultants' opinions to be supported by and consistent with the other evidence of record. (R. 31). Accordingly, the ALJ was entitled to rely on the state agency consultants' opinions to support the RFC determination.

Finally, after considering each of Claimant's impairments, the testimony, the medical records, and the opinion evidence, the ALJ summarized how they in combination resulted in the RFC for a reduced range of light exertional work:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the objective findings of her treating and examining physicians, her reported improvement with conservative treatment, and the opinions as weighted herein. The claimant's asthma, morbid obesity, left knee spurring, thoracolumbar scoliosis and spondylosis, recurrent arrhythmia, diabetes mellitus, and gastroesophageal reflux disease support a limitation to the light exertional level with standing/walking only four hours in an eight-hour workday and avoiding concentrated exposure to hazards. The claimant's asthma, morbid obesity, left knee spurring, and thoracolumbar scoliosis and spondylosis support a limitation to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, as well as never climbing ladders, ropes, or scaffolds. The claimant's morbid obesity and left knee spurring support a limitation to occasional pushing/pulling with the lower extremities. The claimant's asthma, left knee spurring, and thoracolumbar scoliosis and spondylosis support a limitation to avoiding concentrated exposure to extreme cold, extreme heat, and humidity. The claimant's asthma supports a limitation to avoiding concentrated exposure to pulmonary irritants. Further limitations are neither warranted nor supported by the medical evidence of record for the reasons discussed herein.

11

(R. 31–32). The court can trace the ALJ's reasoning in formulating the RFC, which is supported by substantial evidence, and it is not the court's role to reweigh the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted); *see also Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018) (finding no error in the ALJ' s RFC determination where the ALJ used evidence from the record to explain his finding that the claimant was capable of light work, explained the weight assigned to statements made by the claimant and the opinion evidence, and provided a thorough discussion allowing the court to conclude the RFC was supported by substantial evidence). Accordingly, the ALJ did not err in the RFC determination.

## C. Step Five – Whether there are Jobs Claimant Can Perform

Claimant contends that when she was employed she missed three to four days a month of work due to her breathing problems and hospitalizations, continues to be treated with a number of medications for her asthma, and in light of the VE's testimony that more than one absence per month is work preclusive, the Agency failed to carry its burden to demonstrate there are jobs Claimant can perform. Pl.'s Mem. [DE-16-1] at 6–7. Defendant contends the ALJ did not err in failing to include an additional limitation for time off work in the hypothetical to the VE because it was not supported by the record or incorporated into the RFC. Def.'s Mem. [DE-23] at 12.

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a VE' s opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v.*

12

*Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record).

The ALJ thoroughly discussed Claimant's asthma, including that her symptoms worsened at times and that she sought emergency treatment on occasions when her symptoms were uncontrolled by her medications. (R. 28). The ALJ recognized that while Claimant generally had improvement with injections, she also had an unexplained exacerbation in March 2020. (R. 28, 1532). However, the ALJ concluded that overall, later treatment notes indicated she experienced stability in her symptoms with injections, and a treatment note from April 2020, indicates that although she was not back to baseline, since her last visit she reported her asthma was stable. (R. 28, 1523). The ALJ's consideration of Claimant's asthma is sufficiently explained, and the evidence of record does not support that she would miss multiple days a month of work on a consistent basis due to her asthma. The hypothetical to the VE included the limitations the ALJ found supported by the record that were ultimately imposed in the RFC. *See King v. Berryhill*, No. 2:17-CV-58-D, 2018 WL 6817036, at *8 (E.D.N.C. Dec. 6, 2018), *adopted by* 2018 WL 6815651 (E.D.N.C. Dec. 27, 2018). Accordingly, the ALJ's hypothetical to the VE was without error, and the VE's testimony supports the ALJ's conclusion that there are jobs Claimant can perform.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-16] is denied, Defendant's Motion for Judgment on the Pleadings [DE-22] is allowed, and the decision of the Acting Commissioner is affirmed.

13

SO ORDERED, this the 12th day of September, 2022.

                                                                    Robert B. Jones, Jr.
                                                                    United States Magistrate Judge